## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| STRATUS TECHNOLOGIES BERMUDA LTD. AND STRATUS TECHNOLOGIES, INC., <br><br>          Plaintiffs, <br> v. <br><br> REGAL MAINTENANCE SOLUTIONS, LLC, AND REGAL MAINTENANCE SOLUTIONS LTD. <br><br>          Defendants. | Civil Action No.: <br><br><br> **COMPLAINT AND JURY DEMAND** |

## COMPLAINT

Plaintiffs Stratus Technologies Bermuda Ltd. and Stratus Technologies, Inc. (collectively, "Plaintiffs" or "Stratus"), for their Complaint against Regal Maintenance Solutions, LLC and Regal Maintenance Solutions Ltd. ("Defendants" or "Regal Maintenance"), allege as follows:

## NATURE OF THE ACTION

1.      This is an action for federal trademark infringement; federal false designation, description, and representation; common law trademark infringement; state trademark dilution (Massachusetts); state unfair trade practices (Massachusetts); intentional interference with contractual and/or advantageous relations; misappropriation of confidential, proprietary and trade secret information; conversion; accounting; and constructive trust.

## THE PARTIES

2.      Plaintiff Stratus Technologies Bermuda Ltd. is a Bermuda corporation with its headquarters in Hamilton, Bermuda.

3.     Plaintiff Stratus Technologies, Inc. is a Delaware corporation and wholly-owned subsidiary of Stratus Technologies Bermuda Ltd.  Stratus Technologies, Inc. has a principal place of business at 111 Powdermill Road, Maynard, Massachusetts 01754.

4.     Defendant Regal Maintenance Solutions, LLC, on information and belief, is a company incorporated under the laws of the State of Georgia, having its principal place of business at 260 Peachtree Street, Suite 2200, Atlanta, Georgia 30303.

5.     Defendant Regal Maintenance Solutions Ltd., on information and belief, is a company incorporated under the laws of the United Kingdom, having its principal place of business at 6 Sunfield Business Park, New Mill Road, Finchampstead, Berkshire RG40 4QT United Kingdom.

6.     On information and belief, Defendant Regal Maintenance Solutions, LLC and Defendant Regal Maintenance Solutions Ltd. are related entities.

<u>**JURISDICTION AND VENUE**</u>

7.     This is an action in law and equity under the Lanham Act, 15 U.S.C. § 1051 *et seq.* ("Lanham Act"), particularly 15 U.S.C. §§ 1114 and 1125, for federal trademark infringement, federal false designation of origin, and false advertising and misleading descriptions or representations.  Plaintiffs also assert claims for common law trademark infringement, state trademark dilution, and state unfair trade practices under the statutory and common law of several states, including Massachusetts.  Plaintiffs also assert claims for intentional interference with contractual and/or advantageous relations, misappropriation of confidential, proprietary and trade secret information, conversion, accounting and constructive trust.

8.     This Court has jurisdiction over the subject matter of this action pursuant to 28

U.S.C. §§ 1331 and 1338(a)-(b).   This Court also has jurisdiction pursuant to 15 U.S.C. § 1121(a).   This Court has jurisdiction over Plaintiffs' related state law claims pursuant to 28 U.S.C. §§ 1338(b) and 1367(a).   Alternatively, this Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1332(a)(3) because the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between citizens of different States and in which citizens or subjects of a foreign state are additional parties.

9.      Regal Maintenance is subject to suit in Massachusetts at least because, on information and belief, Regal Maintenance transacts business in Massachusetts.

10.      Regal Maintenance is subject to suit in Massachusetts at least because, on information and belief, Regal Maintenance caused and causes tortious injury in Massachusetts.

11.      Venue is proper in this court under 28 U.S.C. § 1391(b)-(c) in that, on information and belief, Regal Maintenance is subject to personal jurisdiction in the Commonwealth of Massachusetts and/or the wrongful acts committed by Regal Maintenance occurred in and are causing injury in the Commonwealth of Massachusetts.

## **FACTS COMMON TO ALL CLAIMS FOR RELIEF**

### *Plaintiffs and Plaintiffs' Trademarks*

12.      Originally founded in 1980, Stratus is a leader in the fault-tolerant, high-availability technology industry, providing customers with solutions to protect and ensure the availability and continuity of technology-dependent operations.

13.      Initially, Stratus provided information processing equipment and related goods and services.   Expanding its platform beyond hardware, Stratus has applied its technology and industry knowledge to provide integrated hardware and software solutions for critical business operations, particularly in the areas of network management and custom services.   Stratus

currently provides, under the STRATUS Trademark defined below, a variety of goods and services that enable its customers to operate and maintain information technology environments, most of which include use of internet and networking services.

14.     Stratus serves thousands of organizations in locations across North America, Europe, Africa, and Asia.

15.     Stratus advertises, markets, and sells its products throughout the United States, including Massachusetts, and throughout the world by means of promotional materials, catalogs, magazines, and similar types of printed literature, as well as over the Internet through its own website at www.stratus.com.

16.     Stratus distributes its products through its own direct sales force and through channel partners that include original equipment manufacturers, distributors, resellers, service providers, and systems integrators.  Stratus' customers represent a wide range of industries, including financial services, life sciences, healthcare, manufacturing, retail, travel and transportation, public safety, and telecommunications, as well as state and federal government agencies.

17.     At least as early as 1982, and prior to the acts of Regal Maintenance complained of herein, Stratus adopted and began to use in commerce the designation and trademark STRATUS (the "STRATUS Trademark") for and in connection with information processing equipment.  Upon information and belief, the STRATUS Trademark is a strong, highly distinctive trademark that has been displayed prominently and continuously since at least that time.

18.     Stratus has since expanded its use of the STRATUS Trademark to include related goods and services in the field of fault-tolerant computing, including computer hardware such as

network servers and storage solutions, computer software and consulting services and, most recently, services relating to virtualization technology (i.e., cloud computing).

19.     The STRATUS Trademark is registered in the U.S. Patent and Trademark Office ("USPTO") and elsewhere worldwide.   In the United States, Plaintiff Stratus Technologies Bermuda Ltd. owns the following registrations related to the STRATUS Trademark:

| Trademark | Registration Number | Registration Date |
|---|---|---|
| STRATUS | 1,305,730 | November 20, 1984 |
| STRATUS and Design | 1,267,767 | February 21, 1984 |
| STRATUS AVANCE | 3,802,062 | June 15, 2010 |
| STRATUS AVANCE and Design | 3,802,061 | June 15, 2010 |

20.     True and correct copies of the Certificates of Registration for Plaintiff's Reg. Nos. 1,305,730 ("the '730 Registration"), 1,267,767 ("the '767 Registration"), 3,802,062 ("the '062 Registration"), 3,802,061 ("the '061 Registration") are attached hereto as composite Exhibit A.

21.     Plaintiff's Reg. Nos. 1,305,730 and 1,267,767 have become incontestable, pursuant to 15 U.S.C. § 1065 and, accordingly, constitute conclusive evidence of the validity of the registered marks, Plaintiff's ownership of the marks, and Plaintiff's exclusive right to use the marks in commerce in connection with the goods specified in the Certificate of Registration. True and correct copies of records from the USPTO's TESS Database, showing the incontestable status of the registrations, are attached hereto as composite Exhibit B.

22.     Plaintiff Stratus Technologies Bermuda Ltd. is the sole owner of the registrations in composite Exhibit A.

23.     Plaintiff Stratus Technologies, Inc. is the exclusive licensee of the registrations in composite Exhibit A.

24.     Plaintiffs have given proper notice of their trademark rights in the STRATUS Trademark.  Plaintiffs mark the STRATUS Trademark with the words "Registered in U.S. Patent

and Trademark Office," "Reg. U.S. Pat. & Tm. Off.," or the letter R enclosed within a circle, in compliance with the requirements of 15 U.S.C. § 1111.  Plaintiffs' marking has been substantially consistent and continuous since the registration of the STRATUS Trademark.

25.     Plaintiffs also have used, since as early as 1982, the prefix "STRATA" in a variety of ways, such as, STRATADOC, STRATALINK, and STRATANET.

26.     Plaintiffs also have used, since as early as 2002, a stylized logo (the "STRATUS Logo") comprised of a downward facing yellow half-moon design appearing above and toward the left of the phrase "Stratus Technologies" used in connection with all of its goods and services.  A true and correct representation of the STRATUS Logo is attached hereto as Exhibit C.  An exemplary image of the STRATUS Logo is shown below:



27.     Since prior to the acts of Regal Maintenance complained of herein, Plaintiffs have achieved wide-spread and substantial sales of products and services designated by the STRATUS Trademark and STRATUS Logo throughout the United States, including Massachusetts, and worldwide.

28.     The STRATUS Trademark and STRATUS Logo appear on Plaintiffs' computer software and hardware, packaging, user manuals, website, and other promotional and advertising materials.

29.     Upon information and belief, the public has come to recognize and understand that the STRATUS Trademark and STRATUS Logo distinguish and identify Plaintiffs' goods and services.

*Regal Maintenance's Corporate History and Websites*

30.      On information and belief, the following entities preceded Regal Maintenance's existence in the United States:  (a) a California entity established in 1988 under the name, Regal Technology Partners, Inc. ("Regal Technology") and (b) a Maryland entity established in 2007 under the name, Regal Computer Maintenance, Inc. ("Regal Computer").

31.      On information and belief, Regal Technology owns or controls at least one website, http://regaltechnology.com/, and continues to operate today from an address in California, 1720 E. Wilshire Avenue, Santa Ana, California 92705.

32.      On information and belief, Regal Technology is presently related to Regal Maintenance.

33.      On information and belief, Regal Maintenance owns or controls Regal Technology's website, http://regaltechnology.com/.

34.      On information and belief, Regal Computer owns or controls at least one website, http://www.regalmaintenance.com/, and continues to operate today from an address in Maryland, 12535 Ocean Reef Drive, Berlin, Maryland 21811.

35.      On information and belief, Regal Computer is presently related to Regal Maintenance.

36.      On information and belief, Regal Maintenance owns or controls Regal Computer's website, http://www.regalmaintenance.com.

37.      On information and belief, Regal Maintenance owns or controls at least two websites, http://regal-maintenance.com/ and http://www.regaluk.com/, and continues to operate today from an address in Georgia, 260 Peachtree Street, Suite 2200, Atlanta, Georgia 30303.

38.      On information and belief, there are no additional entities related to Regal

Maintenance other than Regal Technology and/or Regal Computer.

39.     On information and belief, there are no additional websites owned or controlled by Regal Maintenance other than http://regaltechnology.com/, http://www.regaluk.com/, http://www.regalmaintenance.com/, and/or http://regal-maintenance.com/.

40.     On information and belief, on or about June 6, 2014, Regal Maintenance incorporated in Georgia as a Domestic Limited Liability Company.

### *Regal Maintenance's Unlawful Trademark Activities*

41.     On information and belief, according to Regal Maintenance's LinkedIn page, "Regal [Maintenance] provides IT server support services and managed services to clients who demand and rely on maximum server uptime and operational efficiency….We specialise in support of the Stratus® fault tolerant server product line providing dedicated specialists, former Stratus®…professionals, and server hardware to high profile clients…."

42.     On information and belief, according to a "Recent Update" posted "6 months ago" on Regal Maintenance's LinkedIn page, "Regal [Maintenance] is now open for business in the US!  Actually we have been for the last 10 months since the addition of several high profile clients' [sic] which has enabled us to open a new office in Atlanta and customer service and technical centre in Dallas."

43.     On information and belief, according to Regal Maintenance's websites, "Regal US open[ed] for business" just prior to its incorporation in Georgia, including the opening of a repair facility on May 20, 2014, and the addition of a hardware repair service.

44.     On information and belief, Regal Maintenance represented and represents itself as "The No1 [sic: number one] global Stratus® maintenance and support company."

45.     On information and belief, the STRATUS Trademark appeared and may again

appear prominently at the top of every single page of Regal Maintenance's website pages, taking up more space and appearing in a brighter color than Regal Maintenance's own name.  Regal Maintenance used and uses the STRATUS Trademark throughout its websites.

46.     On information and belief, Regal Maintenance used and uses variations of the STRATUS Trademark, such as "StrataMart" in connection with its purchase and sale of Plaintiffs' products.

47.     On information and belief, Regal Maintenance used and uses a downward facing yellow half-moon design appearing above and toward the left of its name ("Regal Maintenance's Logo").  An exemplary image of Regal Maintenance's Logo and its promotional language is shown below:



48.     On information and belief, Regal Maintenance's Logo appeared and may again appear on all four of Regal Maintenance's websites (http://regaltechnology.com/, http://www.regaluk.com/, http://www.regalmaintenance.com/, and/or http://regal-maintenance.com/) and on Regal Maintenance's LinkedIn page.

49.     Upon information and belief, Regal Maintenance's use of the STRATUS Trademark, the STRATA prefix, and Regal Maintenance's Logo is a reproduction, copy, or colorable imitation of the STRATUS Trademark, the STRATA prefix, and the STRATUS Logo.  Such use in commerce is likely to cause confusion, including confusion as to the affiliation, connection, or association of Regal Maintenance with Plaintiffs, or as to the origin, sponsorship, or approval of Regal Maintenance's goods, services, or commercial activities by Plaintiffs.

50.     Upon information and belief, Regal Maintenance's activities infringed and

infringe the STRATUS Trademark, the STRATA prefix, and the STRATUS Logo by using in commerce, selling, offering for sale, distributing, and/or advertising goods and services under the name "STRATUS," "StrataMart," and/or the downward facing yellow half-moon design, and by applying the name "STRATUS," "StrataMart," and/or the downward facing yellow half-moon design to labels, signs, prints, packages, wrappers, receptacles, promotional material, or advertisements intended to be used in commerce, all in connection with Regal Maintenance's goods and services.

51.     Upon information and belief, Regal Maintenance offers for sale and/or sells its goods and services through the same or similar channels of trade and facilities as Stratus in Massachusetts and throughout the United States.

### *Regal Maintenance's Unlawful Advertising Activities*

52.     As stated above at paragraph 44, on information and belief, Regal Maintenance represented and represents itself as "The No1 [sic: number one] global Stratus® maintenance and support company."  Regal Maintenance's representation is false and misleading.

53.     Regal Maintenance is not a STRATUS company.

54.     Regal Maintenance is not related to or otherwise affiliated, connected, or associated with Plaintiffs.

55.     Regal Maintenance is not, by any measure, the "No1" maintenance and support company.

56.     Regal Maintenance is not a "global" entity.

57.     In addition, on information and belief, Regal Maintenance falsely claimed and claims, or implied and implies, that its engineers are "certified" by Plaintiffs and that Plaintiffs authorized Regal Maintenance's "superior" services.

58.     Stratus has not certified any of Regal Maintenance's engineers and Regal Maintenance does not provide "superior" services.

59.     Regal Maintenance is not an authorized STRATUS service provider, distributor, or reseller.

60.     In addition, on information and belief, Regal Maintenance attempted and attempts to induce Plaintiffs' customers to breach or cancel their service contracts with Plaintiffs by misrepresenting those service contracts as requiring "a 90 day written notice period."

61.     Plaintiffs' service contracts with Plaintiffs' customers do not require "a 90 day written notice period."

62.     In addition, on information and belief, Regal Maintenance falsely claimed and claims that it provides "immediate response and 24/7 availability," thereby implying that Regal Maintenance is able to do what Plaintiffs do, namely, remotely diagnose a hardware fault and ship a replacement part at any time whether or not a customer contact person is available to provide further information about the hardware fault and required replacement part.

63.     On information and belief, Regal Maintenance is not able to remotely diagnose a hardware fault and ship a replacement part at any time whether or not a customer contact person is available to provide further information about the hardware fault and required replacement part.

64.     In addition, on information and belief, Regal Maintenance falsely claimed and claims that its "knowledge spans the entire range of the Stratus® XA®, XAR®, Continuum®, ftServer® and V-Series product lines and all associated operating systems."

65.     On information and belief, Regal Maintenance has no access to Plaintiffs' source code and no knowledge of Plaintiffs' most current operating systems.

66.     In addition, on information and belief, Regal Maintenance falsely claimed and claims that it "can supply all Stratus® systems and components as well as CPU and memory upgrades."

67.     Regal Maintenance is not able to supply current ftServer platforms, as they are manufactured exclusively for Plaintiffs with proprietary information.

68.     In addition, on information and belief, Regal Maintenance falsely claimed and claims that its "Regal Repair Facility…offers repairs to broken Stratus server hardware."

69.     During a September 11, 2015, meeting between the parties discussed below, Regal Maintenance told Plaintiffs that it is not capable of repairing "broken Stratus server hardware" without Plaintiffs' assistance.

70.     Additional false and misleading statements appeared and, on information and belief, may appear again on the "Frequently Asked Questions" page of Regal Maintenance's website.

### Regal's Improper Use of
### Stratus' Trade Secret, Confidential, and Proprietary Information

71.     As stated above at paragraph 57, on information and belief, Regal Maintenance falsely claimed and claims, or implied and implies, that its engineers are "certified" by Plaintiffs and that Plaintiffs authorized Regal Maintenance's "superior" services.

72.     On information and belief, Regal Maintenance employs several former employees of Plaintiff Stratus Technologies, Inc., including Andrew Packer (former Europe, Middle East, and Africa ("EMEA") Service Account Manager ("SAM")), Adrian Plimmer (former EMEA SAM), Douglas Mardon (former EMEA Customer Assistance Center ("CAC") Support Engineer), and Wim Van Duuren (former Worldwide Product Support Engineer) (collectively the "Former Stratus Employees").

73.     On information and belief, Regal Maintenance has not employed, and does not presently employ or engage, any individuals formerly employed by the Plaintiffs other than the Former Stratus Employees.

74.     On information and belief, there is only one employee at Regal Maintenance who was not formerly employed by Plaintiffs or International Business Machines Corp. ("IBM"), a company that sold Plaintiffs' products under the IBM System/88 brand.

75.     Several of the Former Stratus Employees signed non-disclosure agreements with Plaintiff Stratus Technologies, Inc., which specifically forbid them from using, disclosing, or disseminating any Trade Secret (as the term is defined in the non-disclosure agreements), confidential, or proprietary information belonging to Plaintiffs.

76.     In addition, the Former Stratus Employees, as well as every other employee of the Plaintiffs, received an Employee Code of Business Conduct and Ethics, which prohibited them from using, disclosing, or disseminating certain information concerning Plaintiffs, its customers, and its suppliers.

77.     The Plaintiffs' customer relationships and goodwill are of paramount importance to the Plaintiffs in that many of the customers have been customers for an extended period of time.  Moreover, in several instances, the Plaintiffs' customers have entrusted the Plaintiffs with their confidential information with the expectation that such information will not be made public.

78.     The Plaintiffs have engaged in extensive efforts to protect their confidential, proprietary and trade secret information.  For example, Stratus secures its Trade Secret, confidential, and proprietary information on separate, password-protected networks.  One general, password-protected network secures sensitive information concerning, for example, pricing information and customer lists.  Another password-protected network secures sensitive

engineering information concerning, for example, Plaintiffs' products and support strategies, instructions, and data. Those two networks are isolated, that is, they are not connected to one another or any other network, and they are accessible only to authorized employees. Furthermore, Plaintiff Stratus Technologies, Inc. physically secures its principal place of business in Maynard, Massachusetts with a staffed front entryway, mandatory visitor sign-in, and card key access restrictions.

79.   The Former Stratus Employees have statutory and common law obligations not to use or disclose Plaintiffs' confidential information in furtherance of Regal Maintenance's competing support services.

80.   The Former Stratus Employees were exposed to and entrusted with Plaintiffs' Trade Secret, confidential, and proprietary information while employed by Plaintiff Stratus Technologies, Inc. For example, the Former Stratus Employees had access to the password-protected network containing pricing information and customer lists. The Former Stratus Employees also had access to specific customer requirements or preferences for at least some customers, i.e., those customers they were assigned to and worked on. In addition, the Former Stratus Employees had access to Plaintiffs' proprietary network containing customer support sales strategies.

81.   Plaintiffs have used and continue to use all such Trade Secret, confidential, and proprietary information identified in paragraph 80.

82.   Furthermore, the Former Stratus Employees had access to, and received in training, certain of Plaintiffs' Trade Secret, confidential, and proprietary engineering information including, for example, how to perform the following sensitive functions on Plaintiffs' products:

       a.       Perform a disk migration, and configure and manage disk subsystems;

       b.       Determine hardware component status using Plaintiffs' proprietary

commands;

c.  Simulate load on a system to evaluate quality of power supplies (i.e., identify which power supplies are "bad" or running low and, therefore, should be replaced);

d.  Troubleshoot specious powerfails;

e.  Determine whether TPOverseer functionality should be used;

f.  Optimally configure and update the module_start_up.cm as it relates to .tin files;

g.  Understand how process are created in VOS and started at time of boot, write scripts for execution in VOS, and patch a VOS kernel;

h.  Understand the Plaintiffs' stack - application impact; and

i.  Secure access and administrative control.

83.  Plaintiffs have used and continue to use all such Trade Secret, confidential, and proprietary information identified in paragraph 82.

84.  On information and belief, the Former Stratus Employees have disclosed, used or otherwise communicated Plaintiffs' Trade Secret, confidential and proprietary information to Regal Maintenance and to Regal Maintenance's benefit.  Such information includes Plaintiffs' competitive intelligence such as pricing information and customer lists, specific customer requirements or preferences, customer support sales strategies, and the customer service function information identified above in paragraphs 80 and 82.

85.  On information and belief, the information required to perform Regal Maintenance's advertised services on Plaintiffs' current products necessarily includes Plaintiffs' Trade Secret, confidential and proprietary information.  On information and belief, the Former Stratus Employees cannot perform their jobs at Regal Maintenance without disclosing or utilizing Plaintiffs' Trade Secret, confidential and proprietary information.

86.  Upon information and belief, Regal Maintenance knew or became aware that the

Former Stratus Employees were using, disclosing or otherwise disseminating the Plaintiffs' Trade Secret, confidential and proprietary information. Moreover, on information and belief, Regal Maintenance has supported, encouraged, or acted in concert with the Former Stratus Employees in the use or disclosure of the Plaintiffs' Trade Secret, confidential and proprietary information in order to improperly interfere with the Plaintiffs' customer relationships and to the benefit of Regal Maintenance.

87.     By having and utilizing the Plaintiffs' Trade Secret, confidential and proprietary information, Regal Maintenance has gained an unfair competitive advantage in that Regal Maintenance can now service its customers better than it otherwise could have without such information. Moreover, Regal Maintenance's actions have diminished the value of the Plaintiffs' Trade Secret, confidential and proprietary information, negatively affected the Plaintiffs' customer relationships, given Regal Maintenance a strategic advantage as to where to allocate its resources, and unjustly enriched Regal Maintenance at the expense of the Plaintiffs.

*The Parties' September 11, 2015, Meeting*
*and Subsequent Cease-and-Desist Correspondence*

88.     On or about September 11, 2015, Regal Maintenance contacted Plaintiffs, proposed a meeting between the parties, volunteered to travel to Plaintiff Stratus Technologies, Inc.'s principal place of business in Maynard, Massachusetts, in fact traveled to Plaintiff Stratus Technologies, Inc.'s principal place of business in Maynard, Massachusetts, and made a presentation to Plaintiff Stratus Technologies, Inc. Mr. Packer (now of Regal Maintenance) was the specific Former Stratus Employee who traveled to Massachusetts and made the presentation here. Prior to Regal's request for the meeting, Plaintiffs did not know why Regal Maintenance sought the meeting.

89.     On information and belief, there have been no formal business meetings between

the parties other than the September 11, 2015 meeting.

90.     At the September 11, 2015 meeting, Mr. Packer gave a presentation about Regal Maintenance, including an "[i]ntroduction to Regal Maintenance" to "[i]dentify ways we [the parties] can work together" and "[e]xplore collaboration with Logistics [sic] areas."

91.     A true and correct copy of the presentation that Regal Maintenance made to Plaintiffs in Maynard, Massachusetts is attached as Exhibit D.

92.     In the presentation, Mr. Packer represented that Regal Maintenance had only "[b]asic [m]aintenance capabilities" and only recently achieved its "[f]irst major signing" with a customer.  Mr. Packer also represented that some of Regal Maintenance's business goals were to "[e]xpand our Service Business in North America" and, to that end, sought a "partnership" with Plaintiff Stratus Technologies, Inc. (e.g., "How can we help each other?" and "we [Regal Maintenance] could become an extension of the Stratus Service Organization").

93.     Plaintiffs were not interested in any form of "partnership" with Regal Maintenance.  Upon further investigation, Plaintiffs discovered that Regal Maintenance had been falsely and misleadingly implying the existence of such a partnership via its websites.  Also upon further investigation, Plaintiffs discovered evidence of actual confusion in which one of Plaintiffs' current customers mistakenly contacted Plaintiffs seeking to set up *through Plaintiffs* a new vendor number *for Regal Maintenance*.

94.     Plaintiffs first learned of the breadth and scope of Regal Maintenance's U.S. activities upon viewing Regal Maintenance's websites in the early fall of 2015.

95.     On October 23, 2015, counsel for Plaintiffs sent a cease-and-desist letter to Raphael Singh, CEO of Defendant Regal Maintenance Solutions, LLC, and Director of Defendant Regal Maintenance Solutions Ltd.  Plaintiffs demanded that Regal Maintenance

cease-and-desist (1) using the STRATUS Trademark, the STRATA prefix, and the STRATUS Logo in the marketing and promoting of Regal Maintenance's services; (2) making false or misleading statements about Plaintiffs' or Regal Maintenance's respective services; and (3) using Plaintiffs' confidential and proprietary information and provide written assurances concerning Messrs. Packer, Plimmer, Mardon, and Duuren.

96.     Between October 23, 2015, and November 12, 2015, Regal Maintenance temporarily shut down two of its websites, namely, http://www.regaluk.com ("Website Unavailable") and http://regal-maintenance.com/ (same).

97.     Regal Maintenance has not shut down its other websites, including http://regaltechnology.com/ and http://www.regalmaintenance.com/, or the Regal Maintenance LinkedIn page.

98.     On November 12, 2015, after having delayed nearly three weeks, counsel for Regal Maintenance responded to the October 23 cease and desist letter in a letter, denying Plaintiffs' allegations in their entirety but claiming that Regal Maintenance "is in the process of making certain modifications to its website," including:

> (1) adding a disclaimer statement to eliminate any possible confusion as to a relationship between Regal and Stratus; (2) removing the StrataMart sales portal; (3) removing "[t]he No1 global Stratus® maintenance and support company" phrase; and (4) revising language related to Stratus and Regal's service offerings included on the homepage and FAQ's page.

99.     On November 20, 2015, counsel for Plaintiffs responded to Regal Maintenance's letter, explaining that Plaintiffs could not comment on a website unavailable to them.  In addition, counsel for Plaintiffs explained that modifications to the website alone would not adequately protect Plaintiffs' rights in other media and in the market place.  In addition, with respect to the Former Stratus Employees, counsel for Plaintiffs explained that, because Plaintiffs are a "niche" computer hardware and software supplier, there is no "general industry knowledge"

regarding their products and services.  To the contrary, the Former Stratus Employees had to be specifically trained on Plaintiffs' products and services.  Counsel for Plaintiffs noted that Regal Maintenance failed to offer any rebuttal to alleviate Plaintiffs' concerns that the former employees cannot perform their work for Regal Maintenance without violating the inevitable disclosure doctrine.

100.    On December 7, 2015, after having delayed over two more weeks, counsel for Regal Maintenance responded to Plaintiffs' November 20 letter, again denying Plaintiffs' allegations in their entirety but claiming that Regal Maintenance "has made modifications to work with Stratus in resolving the allegations related to the statements contained on the website."

101.    Though Defendants claim to have modified their websites, no such modifications were publicly available as of the filing of this Complaint.  Further, Defendants have not agreed to permanently stop using the STRATUS Trademark, making false and misleading statements on their website or otherwise to promote, market, and sell their services, or using Plaintiffs' Trade Secret, confidential and proprietary information.

102.    Defendants' December 7 letter contained vague, incorrect, and irrelevant allegations that were generally unresponsive to Plaintiffs' concerns and failed to make any representations or promises that would satisfy Plaintiffs.

## COUNT I
## FEDERAL TRADEMARK
## INFRINGEMENT UNDER 15 U.S.C. § 1114

103.    Plaintiffs reaffirm and incorporate by reference each and every allegation contained in paragraphs 1 through 102 as if fully set forth herein.

104.    This is a claim for federal trademark infringement under 15 U.S.C. § 1114 of Plaintiffs' STRATUS Trademark, Reg. Nos. 1,305,730 ("the '730 Registration"), 1,267,767

("the '767 Registration"), 3,802,062 ("the '062 Registration"), 3,802,061 ("the '061 Registration").

105.    Upon information and belief, Regal Maintenance's use in interstate commerce of confusingly similar reproductions, copies, or colorable imitations of Plaintiffs' federally registered STRATUS Trademark in connection with the sale, offering for sale, distribution, or advertising of, or in connection with, Regal Maintenance's goods and services is likely to cause confusion, or to cause mistake, or to deceive, by creating the false and misleading impression that Regal Maintenance's goods and services are manufactured, distributed, or performed by Plaintiffs, or are associated or connected with Plaintiffs, or are sponsored by, endorsed by, or approved by Plaintiffs.

106.    Upon information and belief, Regal Maintenance's actions cause a likelihood of confusion and public deception in the marketplace, and injury to Plaintiffs' goodwill and reputation as symbolized in Plaintiffs' STRATUS Trademark, for which Plaintiffs have no adequate remedy at law.

107.    Upon information and belief, Regal Maintenance's actions demonstrate a willful, intentional, and malicious intent to trade on the goodwill associated with Plaintiffs' federally registered STRATUS Trademark, thereby causing immediate, substantial, and irreparable injury to Plaintiffs.

108.    Upon information and belief, Regal Maintenance has caused, and is likely to continue causing, substantial injury to the public and to Plaintiffs, and Plaintiffs are entitled to injunctive relief, to recover Regal Maintenance's profits, actual damages, enhanced profits and damages, reasonable attorneys' fees and costs, and treble damages, pursuant to 15 U.S.C. §§ 1114, 1116, and 1117.

## COUNT II
## FEDERAL FALSE DESIGNATION, DESCRIPTION,
## AND REPRESENTATION UNDER 15 U.S.C. § 1125(a)

109.    Plaintiffs reaffirm and incorporate by reference each and every allegation contained in paragraphs 1 through 108 as if fully set forth herein.

110.    This is a claim for false designation of origin under 15 U.S.C. § 1125(a) by use of Plaintiffs' STRATUS Trademark, Reg. Nos. 1,305,730 ("the '730 Registration"), 1,267,767 ("the '767 Registration"), 3,802,062 ("the '062 Registration"), 3,802,061 ("the '061 Registration") and the STRATUS Logo.

111.    Upon information and belief, Regal Maintenance's use in interstate commerce of the name "Stratus" in connection with Regal Maintenance's goods and services, which is confusingly similar to Plaintiffs' STRATUS Trademark and STRATUS Logo, has caused and/or is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of Regal Maintenance with Plaintiffs, or as to the origin, sponsorship, or approval of Regal Maintenance's goods, services, or commercial activities by Plaintiffs.

112.    Upon information and belief, Regal Maintenance's actions cause a likelihood of confusion and public deception in the marketplace, and injury to Plaintiffs' goodwill and reputation as symbolized in Plaintiffs' STRATUS Trademark for which Plaintiffs have no adequate remedy at law.

113.    Upon information and belief, Regal Maintenance's actions demonstrate a willful, intentional, and malicious intent to trade on the goodwill associated with Plaintiffs' STRATUS Trademark, thereby causing immediate, substantial, and irreparable injury to Plaintiffs.

114.    Upon information and belief, Regal Maintenance has caused, and is likely to continue causing, substantial injury to the public and to Plaintiffs, and Plaintiffs are entitled to

injunctive relief, to recover Regal Maintenance's profits, actual damages, enhanced profits and damages, reasonable attorneys' fees and costs, and treble damages, pursuant to 15 U.S.C. §§ 1116, 1117, 1118, and 1125.

## COUNT III
## COMMON LAW TRADEMARK INFRINGEMENT

115.    Plaintiffs reaffirm and incorporate by reference each and every allegation contained in paragraphs 1 through 114 as if fully set forth herein.

116.    Regal Maintenance's acts in promoting and selling products and services that are of substantially the same character as Plaintiffs' products in connection with a trademark that is confusingly similar to Plaintiffs' STRATUS Trademark and STRATUS Logo constitutes common law trademark infringement, palming or passing off of Regal Maintenance's goods and services as those of Plaintiffs, and unprivileged imitation, all of which create in the mind of the public the impression that Plaintiffs are responsible for the quality and performance of Regal Maintenance's goods and services or are otherwise connected to or associated with Regal Maintenance.

117.    Regal Maintenance's use of a trademark confusingly similar to Plaintiffs' STRATUS Trademark and STRATUS Logo constitutes a use of Plaintiffs' trademarks on and in connection with goods or services that Plaintiffs cannot control.   Such acts will materially damage the reputation of Plaintiffs and that of its goods and services and damage the goodwill in Plaintiffs' STRATUS Trademark and STRATUS Logo that has been created by Plaintiffs' substantial expenditure of money.

118.    Regal Maintenance's aforesaid acts constitute trademark infringement and unfair competition, all in violation of Plaintiffs' rights under the common law of the Commonwealth of Massachusetts and other states.

119. Regal Maintenance's aforesaid acts have caused and will cause irreparable injury to Plaintiffs, and unless said acts are restrained by this Court, they will be continued and Plaintiffs will continue to suffer irreparable injury.

120. Plaintiffs have no adequate remedy at law.

121. Regal Maintenance's aforesaid acts have harmed Plaintiffs' reputation and have caused damage to Plaintiffs in an amount to be determined.

122. Regal Maintenance's aforesaid acts have unlawfully enriched and benefited Regal Maintenance in an amount to be determined.

## COUNT IV
## STATE TRADEMARK DILUTION (MASSACHUSETTS)

123. Plaintiffs reaffirm and incorporate by reference each and every allegation contained in paragraphs 1 through 122 as if fully set forth herein.

124. Plaintiffs' STRATUS Trademark and STRATUS Logo are distinctive and, through long and extensive use, advertising, marketing, and public awareness, possess a high degree of distinctiveness, including in Massachusetts.

125. Upon information and belief, Regal Maintenance has used and will continue to use Plaintiffs' STRATUS Trademark and STRATUS Logo in Massachusetts, which use has injured and will continue to injure Plaintiffs' business reputation and/or has diluted and will continue to dilute the distinctive quality of Plaintiffs' STRATUS Trademark and STRATUS Logo.

126. Regal Maintenance's aforesaid acts are likely to injure the business reputation of Plaintiffs or likely to dilute the distinctive quality of Plaintiffs' STRATUS Trademark and STRATUS Logo, in violation of Mass. Gen. Laws ch. 110H.

127. Regal Maintenance's aforesaid acts have caused and will continue to cause great

and irreparable injury to Plaintiffs, and unless said acts are restrained by this Court, they will be continued and Plaintiffs will continue to suffer great and irreparable injury.

## COUNT V
## STATE UNFAIR TRADE PRACTICES (MASSACHUSETTS)

128.    Plaintiffs reaffirm and incorporate by reference each and every allegation contained in paragraphs 1 through 127 as if fully set forth herein.

129.    Plaintiffs and Defendants are engaged in the conduct of trade or commerce within the meaning of Mass. Gen. Laws ch. 93A.

130.    Regal Maintenance's acts and practices described above constitute unfair methods of competition and/or unfair or deceptive acts or practices declared unlawful by Mass. Gen. Laws ch. 93A, § 2 and 11, and were committed by Regal Maintenance primarily and substantially in the Commonwealth of Massachusetts and in knowing and willful violation thereof.

131.    Regal Maintenance's aforesaid acts have harmed Plaintiffs' business reputation, severely damaged Plaintiffs' goodwill, and upon information and belief, have unjustly enriched Regal Maintenance.

132.    Regal Maintenance's aforesaid acts have injured and will continue to injure Plaintiffs business reputation and have diluted and will continue to dilute the distinctive quality of Plaintiffs' trademarks.

## COUNT VI
## INTERFERENCE WITH CONTRACTUAL AND/OR ADVANTAGEOUS RELATIONS

133.    Plaintiffs reaffirm and incorporate by reference each and every allegation contained in paragraphs 1 through 132 as if fully set forth herein.

134.    Regal Maintenance knew or should have known that Plaintiff had and has pre-

existing contracts and/or advantageous business relations with a number of entities.

135.     Upon information and belief, Regal Maintenance has interfered with Plaintiffs' contracts and/or advantageous business relations with such entities, including its customers and prospects, despite such knowledge.

136.     Such interference by Regal Maintenance was intentional, malicious and without legal justification, and was conducted by unlawful means for an illegal purpose.

**COUNT VII**
**MISAPPROPRIATION OF TRADE SECRETS,**
**PROPRIETARY INFORMATION AND CONFIDENTIAL INFORMATION**

137.     Plaintiffs reaffirm and incorporate by reference each and every allegation contained in paragraphs 1 through 136 as if fully set forth herein.

138.     By their actions, including those described above, Regal Maintenance has misappropriated and will continue to misappropriate certain of Plaintiffs' trade secrets, proprietary and confidential information through the Former Stratus Employees' inevitable use, reliance upon and/or disclosure of such information.

139.     The copying, disclosure, use and/or destruction of such information by Regal Maintenance constitutes an unauthorized copying, disclosure or use of trade secrets, proprietary and confidential information in violation of the common law and Mass. Gen. ch. 93, §§42 and 42A.

140.     Plaintiffs will suffer substantial, immediate and irreparable harm and damages unless Defendants are enjoined from disclosing and using such trade secrets, and confidential and/or proprietary business information.

**COUNT VIII**
**CONVERSION**

141.     Plaintiffs reaffirm and incorporate by reference each and every allegation

contained in paragraphs 1 through 140 as if fully set forth herein.

142.    Regal Maintenance has converted property belonging to Plaintiffs without legal justification, right, or privilege, including client files, client contact information, client financial information, products, proprietary databases, electronic and paper files and/or other business information.

143.    As a result of Regal Maintenance's conduct, Plaintiffs have been damaged.

**COUNT IX**
**ACCOUNTING**

144.    Plaintiffs reaffirm and incorporate by reference each and every allegation contained in paragraphs 1 through 143 as if fully set forth herein.

145.    Regal Maintenance has wrongfully obtained business from Plaintiffs' clients and/or prospects.  Many of the documents needed to demonstrate the scope or extent of Regal Maintenance's activities, and to clarify the scope or extent of the benefits which Regal Maintenance has received or may receive as a result of their unlawful conduct, are within the possession and/or control of Regal Maintenance.  Plaintiffs seek access to these documents and are entitled to an accounting of all revenues improperly obtained by Regal Maintenance at Plaintiffs' expense and/or detriment.

**COUNT X**
**CONSTRUCTIVE TRUST**

146.    Plaintiffs reaffirm and incorporate by reference each and every allegation contained in paragraphs 1 through 145 as if fully set forth herein.

147.    Regal Maintenance has misappropriated valuable corporate opportunities of the Plaintiffs through its misappropriation of Plaintiffs' trade secrets, and confidential and/or proprietary information.  Unless the court intervenes, Regal Maintenance will continue to enjoy

and be unjustly enriched by the unlawful diversion of such corporate opportunities.

148.    Any and all funds, accounts, revenues and receivables of Regal Maintenance, and any assets acquired with such monies, have been acquired by Regal Maintenance's wrongful conduct and contrary to equitable principles.   All title and rights to such funds, accounts, revenue, receivables, and related assets properly belong with the Plaintiffs since they were derived by Regal Maintenance from its misappropriation of Plaintiffs' corporate opportunities and trade secrets, and confidential and/or proprietary information.

## JURY DEMAND

Plaintiffs hereby demand a trial by jury on all issues triable to a jury in this case.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs pray that this Court:

A.      Enter judgment that Regal Maintenance has infringed Plaintiffs' STRATUS Trademark, Reg. Nos. 1,305,730 ("the '730 Registration"), 1,267,767 ("the '767 Registration"), 3,802,062 ("the '062 Registration"), 3,802,061 ("the '061 Registration");

B.      Enter an order preliminarily and permanently enjoining Regal Maintenance, its officers, agents, servants, employees, attorneys, and all persons acting in concert or participation with it, from infringing Plaintiffs' STRATUS Trademark, Reg. Nos. 1,305,730 ("the '730 Registration"), 1,267,767 ("the '767 Registration"), 3,802,062 ("the '062 Registration"), 3,802,061 ("the '061 Registration");

C.      Enter judgment that Regal Maintenance has competed unfairly with Plaintiffs as set forth in this Complaint, in violation of Plaintiffs' rights under the Lanham Act, and the statutory and common laws of the Commonwealth of Massachusetts and other states;

D.      Enter an order preliminarily and permanently enjoining Regal Maintenance, its officers, agents, servants, employees, attorneys, and all persons acting in concert or participation with it, from competing unfairly with Plaintiffs as set forth in this Complaint, in violation of Plaintiffs' rights under the Lanham Act, and the statutory and common laws of the Commonwealth of Massachusetts and other states;

E.      Award Plaintiffs injunctive relief, Regal Maintenance's profits, actual damages, enhanced profits and damages, reasonable attorneys' fees and costs, and treble damages, pursuant to 15 U.S.C. §§ 1114, 1116, 1117, and 1125;

F.      Order that all infringing articles in Regal Maintenance's possession, including but not limited to labels, signs, prints, packaging, wrappers, receptacles, and advertisements bearing

the infringing marks be delivered to an officer of the Court to be destroyed, pursuant to 15 U.S.C. § 1118;

G.      Enter an order preliminarily and permanently enjoining Regal Maintenance from at any time disclosing, relying upon, or using any confidential, proprietary and/or trade secret information belonging to the Plaintiffs;

H.      Order Regal Maintenance to immediately return all property belonging to the Plaintiffs, including without limitation, all confidential, proprietary and/or trade secret information, whether in electronic or hard copy form, and all copies thereof;

I.      Order Regal Maintenance to provide an accounting for all revenues improperly obtained by Regal Maintenance at the Plaintiffs' expense and/or detriment;

J.      Impose a constructive trust on all funds, accounts, revenues and receivables and any assets acquired with such monies, that have been acquired or received by Regal Maintenance through its wrongful conduct;

K.      Award Plaintiffs actual damages, treble damages, and reasonable attorneys' fees and costs, and pre- and post-judgment interest on each and every award; and

L.      Award Plaintiffs such other and further relief as this Court deems just and proper.

Dated:  December 8, 2015

Respectfully submitted,

_/s/ David J. Byer_
David J. Byer (BBO#544411)
Mark D. Pomfret (BBO#561925)
Andrea B. Reed (BBO#672321)
**K&L GATES LLP**
State Street Financial Center
One Lincoln Street
Boston, MA 02111-2950
Telephone:  (617) 261-3100
Facsimile:   (617) 261-3175
david.byer@klgates.com
andrea.reed@klgates.com

_Counsel for Plaintiffs Stratus Technologies_
_Bermuda Ltd. and Stratus Technologies, Inc._